IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 4:24-cv-1159 |
| v. | ) |
| SHARNJEET K. SAGOO, | ) |
| Defendant. | ) |

# COMPLAINT

1. The United States of America brings this action to reduce to judgment and collect civil penalties assessed against Defendant Sharnjeet K. Sagoo for her willful failure to timely report her financial interest in foreign bank accounts for calendar years 2011 through 2013, as required by 31 U.S.C. § 5314 and its implementing regulations, and to collect accrued interest on such penalties, late payment penalties, and associated fees.

2. The United States brings this action under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C) at the direction of the Attorney General, and at the request of and with the authorization of a delegate of the Secretary of the Treasury.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery of civil penalties.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Ms. Sagoo resides in Fort Worth, Texas, and under 28 U.S.C. § 1391(b)(2) because the civil penalties at issue arose in this district. Venue is also proper in this district under 28 U.S.C. § 1395(a) because a civil proceeding for the recovery of a penalty may be prosecuted in the district where it accrues or the defendant is found.

## BACKGROUND

*Regulatory Background Regarding the Duty to Report Relations with Foreign Financial Institutions*

5. Section 5314(a) of Title 31 of the U.S. Code provides that the Secretary of the Treasury "shall require" a U.S. citizen or resident to file reports when he or she "makes a transaction or maintains a relation for any person with a foreign financial agency."

6. Although Congress did not define what constitutes a "relation" with a foreign financial agency, the implementing regulations make clear that "relationship" is a U.S. person's "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a).

7. A report is required for any year in which the aggregate balance for such foreign financial account or accounts exceed $10,000 at any time during the calendar year. 31 C.F.R. § 1010.306(c).

8. These relationships are required to be reported on a form titled "Report of Foreign Bank and Financial Accounts," commonly known as an

2

"FBAR." For calendar years 2011 and 2012, the required form was Form TD F 90-22.1. Since calendar year 2013, the required FBAR form is the FinCEN Form 114. *See* 31 U.S.C. § 5314; *see also* 31 C.F.R. § 1010.350(a).

9. The FBAR requires the disclosure of, among other things, the maximum value of each foreign account during the calendar year reported, the type of account, the account number, and the name and mailing address of the financial institution at which the account is held.

10. Each foreign financial account must be listed separately on the FBAR, with the limited exception for persons with 25 or more accounts.

11. For the years at issue, the FBAR for a given calendar year was due on or before June 30 of the following calendar year. 31 C.F.R. § 1010.306(c).

12. Section 5321(a)(5) of Title 31 authorizes the Secretary of the Treasury to impose civil penalties for willful failure to comply with the reporting requirements of Section 5314. Specifically, Section 5321(a)(5)(C) provides for maximum penalty equal to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

13. An assessed penalty under 31 U.S.C. § 5321(a)(5)(C) is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

14. Additionally, anyone who is required to file an income tax return and include a Form Schedule B – *Interest and Ordinary Dividends* is required to disclose a financial interest in, or signatory authority over, a foreign financial account or accounts on the Schedule B attached to their income tax return.

15. Specifically, Schedule B asks the taxpayer: "At any time during [tax year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for Form TD F 90-22.1". *See* [Schedules A&B Form 1040 (2008)](#).

## *Ms. Sagoo's Background*

16. Ms. Sagoo has been a permanent resident of the United States for over twenty years.

17. Ms. Sagoo was born and raised in Kenya.

18. Sometime in the 1980s, Ms. Sagoo moved to the United Kingdom to attend university.

19. In 1989, Ms. Sagoo completed her university education in the United Kingdom, receiving the equivalent of a bachelor's degree in Information Technology (IT), with a focus in Systems Analysis.

20. From 1990 through 1999, Ms. Sagoo worked in the IT department of an insurance firm in Kenya.

21. Sometime in 1993, Ms. Sagoo received a U.S. Green Card through her brother, who became a United States citizen after moving to the United States in 1975 to attend pharmacy school.

22. In 1996, Ms. Sagoo's father, who owned and managed a successful transportation and construction business in Kenya, named Ms. Sagoo as his general Power of Attorney to manage his financial affairs.

23. From 2000 through 2004, Ms. Sagoo spent about half of each year in the United States to establish permanent residency, but frequently travelled to Kenya to take care of her parents and to handle the sale of her family's real estate properties in Kenya.

24. In 2004, Ms. Sagoo moved to Texas and established herself as a permanent resident in the United States.

25. After moving, Ms. Sagoo completed continuing education and programming courses at Tarrant County College in Fort Worth, Texas.

26. In 2005, Ms. Sagoo formed an S-Corporation, Ballpark Lamar Mart with her brother and two other individuals. Through that entity, Ms. Sagoo and her business partners purchased a commercial building and renovated it into a laundromat and beer barn. The business operated until it filed for bankruptcy in 2009.

27. In 2006, Ms. Sagoo's parents left Kenya and moved to the United States to live in Texas with Ms. Sagoo and her brother.

28. Since 2011, Ms. Sagoo has worked for PrompTime Healthcare as a caretaker for her parents. Medicare makes payments to PrompTime Home Healthcare Services which in turn pays Ms. Sagoo.

29. Ms. Sagoo worked as a caretaker for her father until his passing in 2014. In addition, she has worked as a caretaker for her mother since 2012.

*Ms. Sagoo's Relations with Foreign Financial Institutions*

30. Between 1996 and 2014, Ms. Sagoo held an interest in multiple financial accounts at financial institutions in Kenya, India, and England.

31. In 1996, Ms. Sagoo was added as an account owner on her parent's jointly held financial accounts at Giro Commercial Bank Limited ("Giro Bank") in Nairobi, Kenya. This was to facilitate the transfer of the accounts to Ms. Sagoo upon her father's death.

32. The accounts at Giro Bank consisted of one main checking account, Account Number 10\*\*\*/SB/6, and then over 50 fixed deposit accounts, largely consisting of certificates of deposits, that would automatically rollover unless Ms. Sagoo requested otherwise.

33. Ms. Sagoo, as a joint account owner, made the majority, if not all, financial decisions with respect to the accounts. Ms. Sagoo, and her parents, considered the funds in the accounts to be hers.

34. Sometime in the 1980s, while attending school in the United Kingdom, Ms. Sagoo opened a foreign bank account at State Bank of India, which is located in London, England.

35. Sometime in the 1990s, when visiting India, Ms. Sagoo opened a foreign bank account at State Bank of Patiala, which is located in New Delhi, India.

36. Ms. Sagoo maintained her interest in these foreign accounts at least through 2015.

6

*Ms. Sagoo's Concealment of her Foreign Accounts*

37. Ms. Sagoo started filing U.S. income tax returns in 2005.

38. From 2005 through 2013, Ms. Sagoo retained a local certified public accountant to prepare her tax returns.

39. As a part of the accountant's regular business practice, he held interviews with clients. In those interviews he spoke with each client about foreign accounts and all income foreign and domestic, among other things.

40. To prepare Ms. Sagoo's returns, the accountant interviewed Ms. Sagoo and asked about her foreign accounts and income.

41. For the nine tax years that the accountant prepared Ms. Sagoo's tax returns, Ms. Sagoo never disclosed her foreign accounts to her accountant.

42. As a part of the accountant's regular business practice, he also provided clients with a detailed questionnaire, called a Client Tax Organizer for clients to fill out and return to him. That Organizer asks: "Do you have a foreign bank account, trust, or business?"

43. The accountant provided Ms. Sagoo with a Client Tax Organizer.

44. Ms. Sagoo never returned to her accountant a completed Client Tax Organizer.

45. As a result, the accountant did not prepare FBARs for Ms. Sagoo to properly report her interest in her foreign accounts.

46. For tax years 2005 through 2013, Ms. Sagoo's accountant reviewed the tax returns he prepared with her, and Ms. Sagoo signed the returns under the penalties of perjury.

47. As early as 2007, Ms. Sagoo was aware of the requirement to report foreign accounts through the instructions on the Schedule B of her federal income tax return.

48. Specifically, for tax years 2006 through 2008, a Schedule B was included as a part of Ms. Sagoo's income tax return.

49. The instructions on the Schedule B "Part III Foreign Accounts and Trusts" section, provided that "You must complete this part if you … (b) had a foreign account."

50. For each of those years, Ms. Sagoo checked the box "no" in response to the question "At any time during [tax year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?"

51. Additionally, on those tax returns, Ms. Sagoo reported domestic interest income in the amounts of $13,101; $19,236; and $7,281, respectively.

52. Those interest earnings were based on funds transferred from her Kenya Giro Bank checking account to her U.S. bank account for purposes of purchasing a residence.

53. After her business filed for bankruptcy in 2009, Ms. Sagoo transferred those funds back to her Kenya bank account.

54. Despite disclosing her domestic interest income, Ms. Sagoo did not disclose to the accountant, or on her originally filed income tax returns for 2005 through 2013, any foreign interest income she earned through her foreign accounts.

55. Indeed, for tax years 2011 through 2013, the foreign accounts earned interest income in the amounts of $131,645; $122,966; and $127,953, respectively.

56. Ms. Sagoo was aware of the interest income from her foreign accounts and used that income to pay her ordinary living expenses in the United States.

57. Ms. Sagoo filed her 2011 through 2013 income tax returns with the IRS without including the interest income earned from the foreign accounts and without an FBAR.

58. Ms. Sagoo also concealed the existence of the foreign accounts (including the Kenya Giro Bank accounts which were jointly held by her and her parents) and foreign interest income while handling the affairs of both her parents, including when applying for Medicaid for both parents.

59. Additionally, when Ms. Sagoo applied for healthcare through the Health Insurance Marketplace under the Affordable Care Act, she omitted her foreign interest income and foreign accounts. As a result, Ms. Sagoo received credits that she was not entitled to, that offset her health insurance payments (or premiums).

Case 4:24-cv-01159-O   Document 1   Filed 11/27/24   Page 10 of 17   PageID 10

*Ms. Sagoo's Failure to Timely File an FBAR Reporting Her Relations with Foreign Financial Institutions*

60. Since 2009, the IRS has offered different programs for the voluntary disclosure of foreign assets.

61. In November 2014, Ms. Sagoo received a letter from State Bank of India, advising her of the Foreign Account Tax Compliance Act (FATCA), which generally requires foreign financial institutions to report on the foreign assets held by their U.S. account holders.

62. The letter further advised Ms. Sagoo that the bank would be conducting a review of customers to determine if accounts are held directly or indirectly by U.S. persons, and if so, the information would be reported.

63. After receiving the letter, rather than contacting her long-time accountant, Ms. Sagoo engaged a new accounting firm and sought advice from a new accountant.

64. Despite having an interest in foreign bank accounts since establishing permanent residency in 2005, Ms. Sagoo did not file an FBAR until September 2015 through the Streamlined Domestic Offshore Procedures Program ("Streamlined program").

65. On September 25, 2015, through the Streamlined program, Ms. Sagoo submitted delinquent FBARs for tax years 2009 through 2015 prepared by Ms. Sagoo's new accountant.

66. Additionally, Ms. Sagoo submitted Forms 1040-X, Amended U.S. individual Income Tax Returns for tax years 2011 through 2013, reporting foreign

interest income based on the foreign accounts that Ms. Sagoo failed to previously disclose.

67. Streamlined Domestic Offshore Procedures are "available to taxpayers certifying that their failure to report foreign financial assets and pay all tax due in respect of those assets did not result from willful conduct on their part." Streamlined Filing Compliance Procedures. The Streamlined Procedures required the submission of amended returns for the previous six years, along with a narrative certifying the failure to be compliant with reporting foreign assets was due to non-willful disregard. Streamlined Domestic also required a miscellaneous offshore penalty of 5% of the offshore assets.

68. Ms. Sagoo was subsequently removed from the Streamlined program because the IRS determined that Ms. Sagoo's failure to report her foreign financial assets resulted from willful conduct.

***Ms. Sagoo's Failure to Timely Report her Relations with Foreign Financial Institutions***

69. For calendar years 2011, 2012, and 2013:

   a. Ms. Sagoo had a financial interest in, or signature authority over, the foreign financial accounts at the State Bank of India, State Bank of Patiala, and Giro Bank.

   b. The total highest balance of Ms. Sagoo's accounts for each year are set out in in the following table:

11

| Year | Total Balance |
|------|---------------|
| 2011 | $1,445,188 |
| 2012 | $1,503,358 |
| 2013 | $1,769,355 |

    c. For 2011, Ms. Sagoo was required to file an FBAR by June 30, 2012, reporting her interest in these accounts but she failed to do so.

    d. For 2012, Ms. Sagoo was required to file an FBAR by June 30, 2013, reporting her interest in these accounts but she failed to do so.

    e. For 2013, Ms. Sagoo was required to file an FBAR by June 30, 2014, reporting her interest in these accounts but she failed to do so.

    f. Ms. Sagoo was also required to disclose that she had an interest in these accounts in a Schedule B to her federal income tax returns (Form 1040) for tax years 2011 through 2013; however, she did not.

70. As part of the Streamlined program, on September 25, 2015, Ms. Sagoo filed an untimely FBAR disclosing her interest in these accounts and the above highest balances for each account.

71. Ms. Sagoo knew, or should have known, of her obligation to file an FBAR for years 2011 through 2013.

72. Alternatively, Ms. Sagoo was willfully blind to the requirements to file FBARs by taking deliberate actions to avoid confirming a high probability of wrongdoing.

73. Ms. Sagoo retained an accountant, who, if accurately informed of her dealings, would have advised her that she was required to file FBARs.

74. Instead, Ms. Sagoo misled her tax return preparer and concealed the amounts and sources of her foreign income.

75. Ms. Sagoo's failure to file FBARs for 2011 through 2013 was willful.

## *This Action is Timely*

76. The statute of limitations for assessment of an FBAR penalty is six years from the date of the violation. 31 U.S.C. § 5321(b)(1).

77. Ms. Sagoo consented to extend the statute of limitations to assess the penalties for the years at issue until December 31, 2023. The specific consents to extend are detailed below:

    a. On September 25, 2017, Ms. Sagoo consented to extend the statute of limitations for the assessment of FBAR penalties for calendar year 2011 to June 30, 2019.

    b. On September 27, 2018, Ms. Sagoo consented to extend the statute of limitations for the assessment of FBAR penalties for calendar years 2011 and 2012 to June 30, 2020.

    c. On June 11, 2019, Ms. Sagoo consented to extend the statute of limitations for the assessment of FBAR penalties for calendar years 2011 through 2013 to June 30, 2021.

    d. On December 22, 2020, Ms. Sagoo consented to extend the statute of limitations for the assessment of FBAR penalties for calendar years 2011 through 2013 to June 30, 2022.

    e. On February 10, 2022, Ms. Sagoo consented to extend the statute of limitations for the assessment of FBAR penalties for calendar years 2011 through 2013 to December 31, 2023.

78. The Internal Revenue Service timely assessed penalties for Ms. Sagoo's willful violation of the FBAR requirement for calendar years 2011 through 2013 on December 2, 2022.

79. Once a civil penalty is assessed for failure to file an FBAR any suit to reduce the penalty to judgment must be commenced within two years from the date of the assessment. 31 U.S.C. § 5321(b)(2).

80. This suit is timely.

## COUNT I
**(Judgment for Penalties Under 31 U.S.C. § 5321(a)(5)(C))**

81. The United States incorporates by reference the allegations in paragraphs 1 through 80.

82. During the 2011, 2012, and 2013 calendar years, Mr. Sagoo was a United States person within the meaning of 31 C.F.R. § 1010.350(b).

83. Ms. Sagoo had a financial interest in, or signature or other authority over the foreign financial accounts listed in paragraph 69, above, for the years 2011 through 2013.

84. The accounts were bank accounts in foreign countries.

85. Ms. Sagoo did not timely file FBARs for 2011, 2012, or 2013 to report her financial interest in the foreign financial accounts in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

86. Ms. Sagoo's failure to timely file FBARs for 2011, 2012, or 2013 was willful within the meaning of 31 U.S.C. § 5321(a)(5).

87. On December 2, 2022, a delegate of the Secretary of Treasury, in accordance with 31 U.S.C. § 5321, timely assessed against Ms. Sagoo a total penalty of $1,020,922.50 for the years 2011 through 2013.

88. On or about December 15, 2022, a delegate of the Secretary of the Treasury sent Ms. Sagoo notice of the assessment of the FBAR penalties and demand for payment.

89. Despite receiving notice and demand for payment, Ms. Sagoo failed to pay the FBAR penalties assessed against her.

90. After the assessment and notice and demand for payment of the FBAR penalties, the IRS identified possible computational issues related to the balance of the Giro Bank accounts used in the penalty computation. These possible computation issues may require the IRS to recalculate the penalties.

91. Because the penalty amounts, as assessed, may need to be recalculated, the United States does not seek a judgment in the amount of the willful FBAR penalties the IRS assessed against Ms. Sagoo.

92. Instead, the amount of the willful FBAR penalties Ms. Sagoo owes should be recalculated in further proceedings with the IRS after this Court determines that Ms. Sagoo is liable for willful FBAR penalties for the calendar years 2011, 2012, and 2013.

93. The United States is entitled to judgment against Ms. Sagoo finding that she is liable for willful FBAR penalties for her failure to timely report the foreign accounts for the years 2011 through 2013, and in an amount that will be determined after further proceedings. That amount shall include pre-judgment and post-judgment statutory accruals as provided under 31 U.S.C. § 3717, from the date of judgment until paid in full.

WHEREFORE, the United States requests that the Court:

A. Enter judgment in favor of the United States of America and against Sharneet Sagoo for her failure to file timely FBARs reporting her signature or other authority over the foreign bank accounts for the years 2011 through 2013, and in an amount that will determined after further proceedings. That amount shall include pre-judgment and post-judgment statutory accruals as provided by law from the date of judgment until paid in full; and

B. Award the United States of America its costs incurred in connection with this action, along with such other relief as justice requires.

Respectfully submitted,

David A. Hubbert
Deputy Assistant Attorney General

*/s/ Hana Bilicki*
Hana Bilicki
Texas Bar No. 24120718
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-616-2904 (t)
202-514-4963 (f)
Hana.Bilicki@usdoj.gov

Date: November 27, 2024