# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

### Case No. 4:24-cv-1159

### UNITED STATES OF AMERICA, *Plaintiff*

### v.

### SHARNJEET K. SAGOO, *Defendant*

## DEFENDANT SHARNJEET K. SAGOO'S
## MOTION TO DISMISS

JASON B. FREEMAN
TX Bar No. 24069736
DEVIN M. HLUDZIK
TX Bar No. 24138552
THOMAS L. FAHRING III
TX Bar No. 24074194

7011 Main Street
Frisco, Texas 75034
(214) 984-3000 [v]
(214)984-3409 [f]
Jason@FreemanLaw.com
DHludzik@FreemanLaw.com
TFahring@FreemanLaw.com

**ATTORNEYS FOR DEFENDANT
SHARNJEET K. SAGOO**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... ii

INDEX OF AUTHORITIES ............................................................................... iii

DEFENDANT SHARNJEET K. SAGOO'S MOTION TO DISMISS ................................. 1

ARGUMENT ................................................................................................. 2

    I.    The FBAR Penalty Assessment Is Void Because It Did Not Comply with the Seventh Amendment. ................................................................................................. 2

    II.    Penalties Assessed Under Section 5321(a)(5) For Violating the Reporting Requirements of Section 5314 are Invalid Because Section 5314 Does Not Provide Specific Reporting Requirements. ................................................................................... 5

    III.    The Government's Penalty Calculation Violates the Administrative Procedures Act and Is Void Because It Fails to Follow 31 U.S.C. § 5321(a)(5). ........................................... 8

    IV.    The Penalty Assessment Is Arbitrary and Capricuous and Violates the Administrative Procedures Act Because It Exceeds Then-Existing Penalty Limitations... 9

    V.    The Government's Suit Is Not a Suit to Reduce to Judgment but an Assessment, which is Time-Barred by the Six-Year Statute of Limitations. ........................................... 11

    VI.    The Penalties in Issue Are Invalid Because They Do Not Comport with the Excessive Fines Clause of the Eighth Amendment. ........................................................ 12

PRAYER/REQUEST FOR RELIEF ................................................................... 16

# INDEX OF AUTHORITIES

## CASES

*Austin v. United States*, 509 U.S. 602 (1993). ................................................................. 3, 4, 12, 13

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989). .......................... 13

*Chapman v. United States*, 500 U.S. 453 (1991). ........................................................................ 5

*Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). ..................................... 9, 10

*City of Chicago v. Morale*s, 527 U.S. 41 (1999). ........................................................................ 5

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424 (2001) ...................................... 15

*Cummings v. Missouri*, 71 U.S. 277 (1866). ............................................................................. 10

*Curtis v. Loether*, 415 U.S. 189 (1974). ..................................................................................... 3

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). .............................................................. 3

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...................................................................... 5

*Jones v. United States*, No. 19-CV-4950, 2020 WL 2803353 (C.D. Cal. May 11, 2020). ................ 8

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994). ............................................................... 10

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). ................................................................... 3

*Parsons v. Bedford*, 3 Pet. 433, 28 U.S. 433 (1830). ................................................................. 3

*Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). ................................................................... 4

*Richardson v. Joslin*, 501 F.3d 415 (5th Cir. 2007) .................................................................... 9

*SEC v. Jarkesy*, 603 U.S. 109 (2024) ................................................................................. 1, 2, 3, 4

*Tull v. United States*, 481 U.S. 412 (1987). ............................................................................... 3

*United States v. Colliot*, AU-16-CA-01281-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018). ......... 9

*United States v. Bajakajian*, 524 U.S. 321 (1998). ........................................................... *passim*

*United States v. Bussell*, No. 15-02034, 2015 WL 9957826 (C.D. Cal. Dec. 8, 2015) ..................... 12

*United States v. Gentges*, 531 F.Supp. 3d 731 (S.D.N.Y. 2021). ...................................................8

*United States v. Halper*, 490 U.S. 435 (1989). .........................................................................13

*United States v. Leeds*, No. 1:22-CV-00379-AKB, 2025 WL 743996 (D. Idaho Mar. 7, 2025)...............12

*United States v. Rum*, No. 8:17-CV-826-T-35AEP, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019)...........8

*United States v. Santos*, 553 U.S. 507 (2008)...........................................................................5

*United States v. Schwarzbaum*, 127 F.4th 259 (11th Cir. 2025). ............................................4, 12

*United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022). ............................................7, 8

*United States v. Schwarzbaum*, 611 F.Supp.3d 1356 (S.D. Fla. 2020). ..........................................8

*United States v. Smith*, 977 F.3d 431 (5th Cir. 2020). ...................................................................5

*United States v. Williams*, No. 09-CV-437, 2014 WL 3746497 (E.D. Va. June 26, 2014). ...................8

*Weaver v. Graham*, 450 U.S. 24, 28 (1981)...............................................................................10

*Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021)...................4

## STATUTES

5 U.S.C. § 706 .......................................................................................................................8, 9

26 U.S.C. § 6038 ....................................................................................................................13

26 U.S.C. § 6048 ....................................................................................................................13

26 U.S.C. § 6677 ....................................................................................................................13

31 U.S.C. § 3711 ..................................................................................................................2, 11

31 U.S.C. § 5314 .............................................................................................................1, 5, 6, 7

31 U.S.C. § 5321 ...............................................................................................................*passim*

31 U.S.C. § 5322 .......................................................................................................................4

31 U.S.C. § 5336 .......................................................................................................................6

31 C.F.R. § 1010.306 ..................................................................................................................7

31 C.F.R. § 1010.820 ..................................................................................................................9

75 Fed. Reg. 65812 .................................................................................................................9

86 Fed. Reg. 72845 .................................................................................................................9

81 Fed. Reg. 42505 .................................................................................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 ..................................................................................................................3

Nat'l Taxpayer Advocate, 2022 Purple Book 77 (Dec. 31, 2021),
    https://www.taxpayeradvocate.irs.gov/wp-
    content/uploads/2022/01/ARC21_PurpleBook_04_ReformPenInts_38.pdf.8 (11th Cir. 2021)...4

IRM pt. 4.26.16.5.2 (6-24-2021). ...........................................................................................8

1 N. Webster, American Dictionary of the English Language (1828) ................................13

S. Johnson, A Dictionary of the English Language 680 (4th ed. 1773) .............................13

## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. I, § 9th Cir. 2021). ....................................................................................10

U.S. CONST. amend. VII ..........................................................................................................3

U.S. CONST. amend. VIII ........................................................................................................12

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | Case No. 4:24-cv-1159 |
| V. | § | |
| | § | |
| SHARNJEET K. SAGOO, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SHARNJEET K. SAGOO'S MOTION TO DISMISS**

Defendant Sharnjeet K. Sagoo ("Defendant" or "Ms. Sagoo") hereby files this Motion to Dismiss in response to the Complaint filed by the United States of America ("Plaintiff") on November 27, 2024. (Doc. No. 1).

The underlying assessment is invalid because it did not comply with the Seventh Amendment of the United States Constitution. A penalty assessed by an administrative agency without comporting with the Seventh Amendment's guarantee of a jury trial is invalid. *SEC v. Jarkesy*, 603 U.S. 109 (2024). Moreover, the penalties—which, although "assessed" in 2022, were for the years 2011, 2012, and 2013—were based upon a 2021 amendment to a regulation, which removed a $100,000 regulatory *ceiling* on such penalties. That retroactive amendment of the regulation—*a decade after an alleged violation*—to increase the applicable penalty violates the Constitution's prohibition on *ex post facto* penal provisions.

In addition, the IRS assessed the penalty under 31 U.S.C. § 5321(a)(5) for a purported violation "*of Section 5314*"—failing to file an FBAR report. But the language of 31 U.S.C. § 5314 does not make

any reference to an FBAR report, much less impose an obligation to file one. The purported penalties, however, are only authorized for a violation "*of Section 5314*."

Moreover, although it brings this suit under a statute that authorizes a limited scope proceeding to reduce an assessment of an FBAR penalty to judgment, Plaintiff asks the Court, not to actually reduce its prior "assessment" to judgment, but to declare that Ms. Sagoo is liable for willful FBAR penalties and to provide that such penalties should be "be recalculated in further proceedings with the IRS," because the IRS's assessment was incorrect. (Compl. ¶ 92). Because Plaintiff brings a suit that is not authorized by the statutory provisions under which it is brought, it fails to state a claim upon which relief can be granted.

In any event, ultimately, Plaintiff seeks to wipe out the balance in the Defendant's accounts at issue because an administrative agency unilaterally determined (without the benefit of a jury) that the defendant "willfully" failed to file information reports[1] (in violation of a statute that does not even refer to such report). The penalty at issue was imposed in back-to-back-to-back years (2011–2013) for the exact same claimed violation to report the exact same accounts. It is not proportionate to the vindication of any legitimate interest and violates the Eighth Amendment of the United States Constitution.

## **ARGUMENT**

### I. **The FBAR Penalty Assessment Is Void Because It Did Not Comply with the Seventh Amendment.**

Plaintiff brings this action under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C). (Compl. ¶ 2). It asserts that, on December 2, 2022, the Internal Revenue Service "assessed penalties" against Ms. Sagoo for the willful failure to file an FBAR for calendar years 2011 through 2013. (Compl. ¶¶ 78, 87).

---

[1] FBAR reports do not report or require the payment of any tax. Rather, they are merely information returns—they report information to the government. Notably, the Supreme Court has previously found that substantial penalties violate the Eighth Amendment where they punish mere failures to file information reports in similar contexts. *United States v. Bajakajian*, 524 U.S. 321, 337–40 (1998).

It further maintains that "once a civil penalty is assessed for failure to file an FBAR any suit to reduce the penalty to judgment must be commenced within two years from the date of the assessment," citing 31 U.S.C. § 5321(b)(2). (Compl. ¶ 79). The suit is not one to determine whether to impose a penalty; rather, it is one to "reduce [an already assessed] penalty to judgment." (Compl. ¶ 79). And it is predicated on a faulty (though fundamental) assumption: That an administrative agency's assessment of penalties was valid.

It was not. That underlying assessment is invalid because it did not comply with the Seventh Amendment. As detailed in the Supreme Court's recent decision in *Jarkesy*, where, as here, an administrative agency, through an administrative process, assesses a civil penalty to vindicate a claim that is legal in nature, that penalty is invalid. 603 U.S. 109. It is invalid because the penalized individual is guaranteed a jury trial in an Article III court before such a penalty can be assessed. Because the IRS's penalty "assessment" was invalid, Plaintiff cannot properly maintain a suit to reduce that assessment to judgment, as it seeks to do here. Its action should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6).

By its text, the Seventh Amendment guarantees that in "[s]uits at common law, . . . the right of trial by jury shall be preserved." U.S. CONST. amend. VII; *Jarkesy*, 603 U.S. at 122. In construing this language, the Supreme Court has held that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. *Id.* (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Rather, the Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.* (quoting *Parsons v. Bedford*, 3 Pet. 433, 28 U.S. 433, 447 (1830)).

The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." *Id.* (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). And "money damages are the prototypical common law remedy." *Id.* at 123 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 255

(1993)).

Whether a monetary remedy is legal turns upon whether it is designed to punish or deter the wrongdoer, or, on the other hand, solely to "restore the status quo." *Id.* (citing *Tull v. United States*, 481 U.S. 412, 422 (1987)). As the Supreme Court has explained, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993) (internal quotation marks omitted)). Applying these principles, the Supreme Court has recognized that "civil penalt[ies are] a type of remedy at common law that could only be enforced in courts of law." *Id.* (quoting *Tull*, 487 U.S. at 422).

Here, the civil penalties were intended to punish and deter. Those penalties are not tied to compensating the government. They are punitive. They are based upon an administrative finding of a "willful" failure to file. And they were imposed instead of the lesser penalties that would apply non-willful, negligent failures to file. Such willful FBAR penalties have been held to be subject to the Eighth Amendment, which guards against disproportionately punitive measures. *United States v. Schwarzbaum*, 127 F.4th 259, 274, 278 (11th Cir. 2025). And the text of the statute mandates that the penalty is calculated "irrespective of the magnitude of the financial injury to the United States, if any." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021).

The penalties in this case are quintessential "punitive" and "deterrent" penalties. The Taxpayer Advocate Service, an independent organization within the IRS itself, recently recognized as much: "[t]he maximum FBAR penalty is among the harshest civil penalties the government may impose." Nat'l Taxpayer Advocate, 2022 Purple Book 77 (Dec. 31, 2021), https://www.taxpayeradvocate.irs.gov/wp-content/uploads/2022/01/ARC21_PurpleBook_04_ReformPenInts_38.pdf.

Further indicating their punitive nature, the *civil* penalties' require the same mens rea applicable

to *criminal* violations—the highest mens rea known to our legal system. The willfulness mens rea, for which this high penalty at issue is reserved, is identical to that found in the FBAR statute's *criminal* penalties. *See* 31 U.S.C. § 5322(a)–(b); *see also Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (noting that a "term appearing in several places in a statutory text is generally read the same way each time it appears"). In other words, this *civil* penalty only applies to those with a culpable mindset equivalent to that of a *criminal* under the same statute. Significantly, provisions that focus on the culpability of the defendant make a statutory penalty "look more like punishment, not less." *Austin*, 509 U.S. at 619. A penalty of such severity, applied only to those with a criminal mens rea, clearly bears the hallmarks of being punitive in nature.

As such, the penalties are "a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 603 U.S. at 125. And as the Supreme Court has instructed, "[t]hat conclusion effectively decides that this suit implicates the Seventh Amendment right, and that a defendant would be entitled to a jury on these claims." *Id.*

But here, Ms. Sagoo was not afforded a jury trial. The penalty was assessed through an inquisitorial, administrative process that lacked the guarantees afforded in an Article III court. It was, as a result, wholly void. And because the underlying assessment was void, Plaintiff cannot maintain a suit to reduce that void assessment to judgment.

## II.    Penalties Assessed Under Section 5321(a)(5) For Violating the Reporting Requirements of Section 5314 are Invalid Because Section 5314 Does Not Provide Specific Reporting Requirements.

`      Section 5321(a)(5) authorizes the Secretary to impose civil penalties for willful violations "*of Section 5314.*" Section 5314, however, does not set forth specific reporting requirements. It certainly does not, itself, set out a reporting obligation with the level of clarity that is required to allow for punitive assessments for a violation of its requirements.

It is a basic principle of due process that a punitive enactment, if not clearly defined, is void. *City of Chicago v. Morales*, 527 U.S. 41, 57 (1999) ("It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ."); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Further, the rule of lenity mandates that ambiguous punitive statutes be interpreted in favor of the defendant. *United States v. Santos*, 553 U.S. 507, 514 (2008); *Chapman v. United States*, 500 U.S. 453, 463 (1991); *United States v. Smith*, 977 F.3d 431, 4735 (5th Cir. 2020).

Notably, 31 U.S.C. § 5321(a)(5) does not authorize the imposition of penalties for a violation of a Treasury Regulation. Had Congress intended to do so, it could easily have authorized penalties for a failure to comply with the reporting requirements of 31 U.S.C. § 5314 *and* any Regulation thereunder. Indeed, it did so in other subsections of 31 U.S.C. § 5321.

For example, 31 U.S.C. § 5321(a)(6) provides that: "The Secretary of the Treasury may impose a civil money penalty of not more than $500 on any financial institution or nonfinancial trade or business which negligently violates any provision of this subchapter (except section 5336) *or any regulation* prescribed under this subchapter (except section 5336)." 31 U.S.C. 5321(a)(6)(A) (emphasis added). Likewise, in 31 U.S.C. § 5321(a)(1), Congress provided that "[a] domestic financial institution or nonfinancial trade or business, and a partner, director, officer, or employee of a domestic financial institution or nonfinancial trade or business, willfully violating this subchapter *or a regulation prescribed or order issued under this subchapter* . . . or willfully violating *a regulation* prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91–508, is liable to the United States Government for a civil penalty . . . ." 31 U.S.C. § 5321(a)(1) (emphasis added). Section 5321(a)(2) also specifically refers to a regulation: "The Secretary of the Treasury may impose an additional civil penalty on a person not filing a report, or filing a report containing a material omission or misstatement, under section 5316 of this title *or a regulation prescribed under section 5316*." 31 U.S.C. 5321(a)(2) (emphasis

added). Section 5321(a)(3) likewise specifically authorizes penalties for a violation of a regulation.

But 31 U.S.C. § 5321(a)(5)—the provision at issue here—conspicuously limits its scope to a violation "of section 5314" itself. That is, the "violation" that gives rise to the imposition of a civil money penalty under 31 U.S.C. § 5321 must be specified in a provision of 31 U.S.C. § 5314. But no provision of 31 U.S.C. § 5314 clearly imposes an obligation to file an FBAR upon Ms. Sagoo.

Further bolstering this reading, 31 U.S.C. § 5314 itself repeatedly distinguishes between a "requirement under this section [5314] [and] a regulation under this section [5314]." 31 U.S.C. § 5314(b)(1); 31 U.S.C. § 5314(b)(2) ("a requirement *or a regulation* under this section") (emphasis added); 31 U.S.C. § 5314(b)(3) ("subject to a requirement *or a regulation*") (emphasis added); 31 U.S.C. § 5314(b)(4) ("exempt from a requirement *or a regulation* under this section") (emphasis added); 31 U.S.C. § 5314(b)(5) ("this section *or a regulation* under this section") (emphasis added); and 31 U.S.C. § 5314(c) ("required to be kept under this section *or under a regulation* under this section") (emphasis added). That is, Congress clearly and repeatedly referred to a regulation where it intended to. But again, no such language is present in 31 U.S.C. § 5321(a)(5).

Moreover, and in any event, 31 U.S.C. § 5314 also limits the circumstances under which it authorizes the Treasury to require reporting or recordkeeping. Section 5314 authorizes the Treasury to require "a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person **makes a transaction** *or* **maintains a relation for any person with a foreign financial agency.**" 31 U.S.C. § 5314(a) (emphasis added). Here, the Treasury Regulations imposing the FBAR reporting obligation far exceed the scope of this authorization. Indeed, those regulations require reporting where there is no transaction made and where an account is held directly, rather than through a relation for a person with the foreign financial agency. Thus, even if a violation of a regulation could provide the basis for the penalty (and it cannot), because 31 U.S.C. § 5321(a)(5) refers exclusively to a

violation "of section 5314," the violation would, at the very least, have to be of a filing obligation that is even contemplated by 31 U.S.C. § 5314. Because the regulation clearly exceeds the express language of 31 U.S.C. § 5314, for that reason alone it cannot serve as the basis for a violation "of section 5314."

III.    **The Government's Penalty Calculation Violates the Administrative Procedures Act and Is Void Because It Fails to Follow 31 U.S.C. § 5321(a)(5).**

By statute, the "willful" civil penalty at issue is 50 percent of "the balance in the account *at the time of the violation*." 31 U.S.C. § 5321(a)(5)(C)(i) and (D)(ii). (emphasis added). The FBAR report, under 31 C.F.R. § 1010.306, was due on June 30th of the year following the calendar year at issue. (i.e., June 30, 2012 for the 2011 year; June 30, 2013 for the 2012 year; and June 30, 2014 for the 2013 year).

For these purposes, the "time of the violation" means the applicable filing deadline—here, June 30, 2012; June 30, 2013; and June 30, 2014. *See United States v. Schwarzbaum*, 24 F.4th 1355, 1366 (11th Cir. 2022) ("The time of an FBAR violation is June 30, the annual FBAR filing deadline."); *see id.* ("Indeed, the government concedes that the IRS mistakenly calculated Schwarzbaum's statutory maximum penalties using his foreign accounts' highest annual balances rather than their June 30 balances."); *see also* IRM pt. 4.26.16.5.2 (6-24-2021) (noting that the "violation date" for calendar years 2015 and earlier is June 30 of the year following such calendar year).

According to the Complaint, however, the IRS imposed the penalty upon the "highest balance of Ms. Sagoo's accounts for each year." (Compl. ¶ 69). That is, it did not base the penalty upon the balance in the account *at the time of the violation*, but instead, based it upon the highest balance of the account during the prior year. Such a calculation is contrary to the statute and is arbitrary and capricious. *United States v. Gentges*, 531 F.Supp. 3d 731, 754 (S.D.N.Y. 2021) ("The Government argues that the 'IRS reasonably relied upon the best information available for the 4337 Account—the December 2007 balance of $448,975—because a June 2008 balance was unavailable.' But in light of the Internal Revenue Manual's clear instruction to use the June 30 account balance, the agency's decision to use the December 2007 balance was an arbitrary expedient. The Court therefore denies

the Government's Motion with respect to the penalty calculation for the 4337 Account . . .").

Courts have reviewed IRS penalty calculations for abuse of discretion under the "arbitrary and capricious" standard of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2)(A); *Jones v. United States*, No. 19-CV-4950, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020) (applying the APA's "arbitrary and capricious" standard to review the IRS's penalty assessment for an FBAR violation); *United States v. Schwarzbaum*, 611 F.Supp.3d 1356, 1372 (S.D. Fla. 2020) (same); *United States v. Rum*, No. 8:17-CV-826-T-35AEP, 2019 WL 3943250, at *9 (M.D. Fla. Aug. 2, 2019), *report and recommendation adopted*, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019), *aff'd*, 995 F.3d 882 (11th Cir. 2021) (same); *United States v. Williams*, No. 09-CV-437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014) (same).

Here, the IRS failed to follow the statute and its own guidance. Its action was arbitrary and capricious, as agency action must be "in accordance with law." 5 U.S.C. § 706(2).

Because the government's calculation does not follow the statute and is arbitrary and capricious, it violates the Administrative Procedures Act and is void. It should be so declared, and the government action should be dismissed.

## IV.    The Penalty Assessment Is Arbitrary and Capricuous and Violates the Administrative Procedures Act Because It Exceeds Then-Existing Penalty Limitations.

At the time of Ms. Sagoo's alleged failures to report, the then-existing regulation providing for a willful penalty limited that penalty to $100,000. 31 C.F.R. § 1010.820(g)(2) (enacted Oct. 26, 2010); 75 Fed. Reg. 65812, 65839. The regulation provided, in relevant part, as follows:

> In the case of a violation of § 1010.350 or § 1010.420 involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000.

31 C.F.R. § 1010.820(g)(2). The Treasury amended the regulation as of June 30, 2016, to adjust the $100,000 figure for inflation. 81 Fed. Reg. 42505. It subsequently, as of December 23, 2021, amended

DEFENDANT SHARNJEET K. SAGOO'S MOTION TO DISMISS                                    9

the regulation again to remove the $100,000 ceiling entirely. 86 Fed. Reg. 72845 (Dec. 23, 2021).

At least one court to address the specific issue has held that FBAR penalties imposed under the pre-2021 version of 31 C.F.R. § 1010.820(g)(2) could not, as its language clearly provides, exceed $100,000. *United States v. Colliot*, AU-16-CA-01281-SS, 2018 WL 2271381, at *3 (W.D. Tex. May 16, 2018) ("In sum, [then-existing] § 1010.820 is a valid regulation, promulgated via notice-and-comment rulemaking, which caps penalties for willful FBAR violations at $100,000."). That court further held that decisions to assess FBAR penalties in excess of $100,000 are arbitrary and capricious, in violation of the APA. *Id.* ("Consequently, the IRS acted arbitrarily and capriciously when it failed to apply the regulation to cap the penalties assessed against Colliot. 5 U.S.C. § 706(2) (requiring agency action to be 'in accordance with law')"); *see also Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) ("[A]n agency must abide by its own regulations.") (citing *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979).

Here, the government seeks to impose penalties for the years 2011 through 2013. The then-existing regulation capped willful FBAR penalties at $100,000. Indeed, other than an inflation adjustment, that $100,000 regulatory cap remained on the books until December of 2021—nearly 10 years after the first alleged violation at issue. The government cannot change the rules of the game nearly a decade after the fact. *Landgraf v. USI Film Products*, 511 U.S. 244, 268–69 (1994) ("[S]tatutory retroactivity has long been disfavored," and "every statute, which . . . creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . . . .") (internal citations omitted).

Indeed, the Constitution prohibits ex post facto penal provisions. U.S. CONST. art. I, § 9 ("No Bill of Attainder or ex post facto Law shall be passed."). As set forth above, the penalty at issue is a quintessential penal provision. The after-the-fact amendment of the regulation to retroactively increase a penalty more than a decade later effects a prohibited ex post facto penal provision. *Weaver*

DEFENDANT SHARNJEET K. SAGOO'S MOTION TO DISMISS                    10

*v. Graham*, 450 U.S. 24, 28 (1981) (The ex post facto clause "forbids the Congress . . . to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'") (quoting *Cummings v. Missouri*, 71 U.S. 277, 326 (1866)).

Moreover, the assessment of an FBAR penalty is subject to a six-year statute of limitations. 31 U.S.C. § 5321(b)(1). On multiple occasions, the government solicited and obtained from Ms. Sagoo agreements to extend the statute of limitations. Ultimately, such agreements purported to extend the statute of limitations through December 31, 2023. As detailed in its Complaint, the government first obtained such an extension on September 25, 2017. (Compl. ¶ 77). Ms. Sagoo had the right to rely upon the then-existing regulation and its penalty maximum in entering into such an extension. It is fundamentally unfair for the government to solicit an agreement to extend the statute of limitations to assess a penalty and to then, after doing so, modify the penalty in a manner that increases that penalty by more than 500%, as applied here.

## V. The Government's Suit Is Not a Suit to Reduce to Judgment but an Assessment, which is Time-Barred by the Six-Year Statute of Limitations.

The government brings this suit under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C) to reduce a civil penalty assessed for failure to file an FBAR to judgment. (Compl. ¶¶ 2, 79). But the government informs the Court that the penalty that the IRS purported to assess was not computed correctly. (*See* Compl. ¶¶ 90, 91). Because of this, the government "does not seek a judgment in the amount of the willful FBAR penalties the IRS assessed against Ms. Sagoo." (Compl. ¶ 91). Rather, it seeks for the Court to enter a finding that Ms. Sagoo is liable for willful FBAR penalties and that such penalties should be "be recalculated in further proceedings with the IRS." (Compl. ¶ 92). That is, the government seeks a "re-do"—the right to assess a new, different penalty. But such an adjustment or recalculation would constitute an "assessment."

An assessment at this stage of the game, however, is time barred. Section 5321(b)(1) provides

a six-year period of limitations during which to "assess a civil penalty."

Moreover, the statute that authorizes this suit does not allow for such a procedure. It merely authorizes "a civil action to recover a civil [FBAR] penalty assessed" against the defendant. 31 U.S.C. § 5321(b)(2). It does not authorize a civil action to recover a *different* FBAR penalty than was assessed. And the civil proceeding that is authorized under 31 U.S.C. § 5321(b)(2) does not provide for "further proceedings with the IRS" (much less, proceedings outside of the six-year statute of limitations) or for a procedure to make limited factual findings or declaratory statements, such as a determination that Ms. Sagoo is liable for willful FBAR penalties and then leaving the calculation of a correct penalty up to the IRS to then assess.

Because the suit that the government brings is not authorized by the 31 U.S.C. §§ 5321(b)(2) or 3711(g)(4)(C), the government fails to state a claim upon which relief can be granted and the Court lacks subject matter jurisdiction to entertain the suit. Plaintiff's suit should, therefore, be dismissed.

## VI.    The Penalties in Issue Are Invalid Because They Do Not Comport with the Excessive Fines Clause of the Eighth Amendment.

The Eighth Amendment of the United States Constitution prohibits excessive "fines," U.S. CONST. amend. VIII, *see United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998), and a fine violates the Excessive Fines Clause if it is "grossly disproportionate to the gravity of a [defendant's] offense," *id.* at 324. The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin,* 509 U.S. at 609–10 (emphasis deleted); *Bajakajian*, 524 U.S. at 328.

Federal courts have held that the Excessive Fines Clause applies to willful FBAR penalties. *See, e.g., United States v. Bussell*, No. 15-02034, 2015 WL 9957826, at *8 (C.D. Cal. Dec. 8, 2015) ("[T]he Court holds that an FBAR penalty of $1,221,806 violates the Excessive Fines Clause."), *aff'd* 699 Fed. App'x 695 (9th Cir. 2017). Recently, the Eleventh Circuit held that FBAR penalties were fines and violated the Eighth Amendment's Excessive Fines Clause. *See Schwarzbaum*, 127 F.4th at 278 (The

Court stated that "[t]here is little doubt in our mind that each of these penalties is grossly disproportionate, and therefore the [amount of FBAR penalties] the Government seeks . . . is constitutionally excessive."). Even more recently, the United States District Court for the District of Idaho concluded that "this Court assumes the Excessive Fines Clause applies to FBAR penalties" and where "the assessed penalties are grossly disproportional to [the defendant's] conduct, the Government may not recover [FBAR penalties] against [the defendant] personally or against her property." *United States v. Leeds*, No. 1:22-CV-00379-AKB, 2025 WL 743996, at *11 (D. Idaho Mar. 7, 2025).

The Supreme Court, in interpreting the scope of the Eighth Amendment, has held that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality," which means that the amount of the penalty must "bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. A penalty thus "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. In determining when a penalty would be "excessive" for Eighth Amendment purposes, the Supreme Court has also noted that "[e]xcessive means surpassing the usual, the proper, or a normal measure of proportion." *Id.* at 335 (1998) (citing 1 N. Webster, American Dictionary of the English Language (1828) (defining excessive as "beyond the common measure or proportion"); S. Johnson, A Dictionary of the English Language 680 (4th ed. 1773) ("beyond the common proportion")).

The purpose behind the penalties is clearly punitive. There is, for instance, no remedial purpose served by these penalties as they are not contingent or based upon, any loss. Their purpose is strictly punitive and are therefore subject to the limitations imposed by the Eighth Amendment.

Indeed, under the Supreme Court's precedent in *Austin*, a monetary sanction is a "fine" if it is "payment to a sovereign as punishment for some offense," *Austin*, 509 U.S. at 622 (quoting *Browning-*

*Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)), and a payment is made "as punishment for some offense" when its purpose is—even in part—retribution or deterrence. *Id.* at 602.

The Supreme Court addressed the scope of the Excessive Fines clause in *Bajakajian*, 524 U.S. at 328. In *Bajakajian*, Respondent Hosep Bajakajian attempted to leave the United States without reporting that he had $357,144 in cash. Federal law required Bajakajian to report that he was transporting currency in excess of $10,000. 524 U.S. 321 (1998). Title 18, Section 982(a)(1) of the United States Code required that any person convicted of willfully violating the reporting requirement shall forfeit "any property . . . involved in such offense." *Id.* at 324. Bajakajian, therefore, forfeited all $357,144 to the United States for failure to report; the Court then addressed whether the forfeiture of the entire $357,144 violated the Excessive Fines Clause of the Eighth Amendment. *Id.* The Court held that the forfeiture violated the Eighth Amendment because it was "grossly disproportional to the gravity" of Bajakajian's offense. *Id.* at 325. The court's relevant analysis is summarized below:

> Under this standard, the forfeiture of respondent's entire $357,144 would violate the Excessive Fines Clause. Respondent's crime was solely a reporting offense. It was permissible to transport the currency out of the country so long as he reported it. Section 982(a)(1) orders currency to be forfeited for a "willful" violation of the reporting requirement. Thus, the essence of respondent's crime is a willful failure to report the removal of currency from the United States. Furthermore, as the District Court found, respondent's violation was unrelated to any other illegal activities. The money was the proceeds of legal activity and was to be used to repay a lawful debt.
>
> . . .
>
> The harm that respondent caused was also minimal. Failure to report his currency affected only one party, the Government, and in a relatively minor way. . . . Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.
>
> . . .
>
> Comparing the gravity of respondent's crime with the $357,144 forfeiture the Government seeks, we conclude that such a forfeiture would be grossly disproportional to the gravity of his offense. It is larger than the $5,000 fine imposed by the District Court by many orders of magnitude, and it bears no articulable

DEFENDANT SHARNJEET K. SAGOO'S MOTION TO DISMISS                                    14

correlation to any injury suffered by the Government.

*Id.* at 337–40.

In subsequent cases, the Supreme Court has identified three "general criteria" to guide the determination of whether a fine is grossly disproportionate: (1) "the degree the defendant's reprehensibility or culpability;" (2) "the relationship between the penalty and the harm to the victim caused by the defendants actions;" and (3) "the sanctions imposed in other cases for comparable misconduct." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 434–35 (2001).

Here, much like in *Bajakajian*, the failure at issue merely resulted in a failure to report certain information to the government. The underlying activity was entirely legal. It was permissible to maintain such accounts. The proceeds of the accounts at issue were entirely legal. There was no connection to any illegal activity. Thus, there was no underlying "bad" conduct. And any tax issues, if any, are subject to their own separate penalty regime.

Here, the IRS imposed against Defendant FBAR penalties for the years 2011 through 2013 in an amount of $1,020,922.50. (Compl. ¶¶ 87, 90–92). That is, the penalty was imposed in back-to-back-to-back years for the exact same claimed violation to report the exact same accounts. On information and belief, there has been no other case in which the government has assessed three consecutive years of FBAR penalties for failing to report the same accounts. That fact underscores the extraordinary penalty at issue here and its disproportionality to any "harm" to the government. The government seeks to completely wipe out the defendant's accounts because an agency unilaterally determined (without the benefit of a jury) that the defendant failed to file information reports (in violation of a statute that does not even refer to such report). It does not require a law degree, much less an appointment to a federal judgeship, to recognize that something is not right about this scenario. It should shock the conscience.

As in *Bajakajian*, the harm to the government deriving from the failure to file the form at issue

was minimal. The reporting deficiency only affected the United States, and in a relatively minor way. It was solely a reporting obligation and it was deprived only of information. In *Bajakajian*, the government sought to forfeit $357,000 for the reporting failure at issue there. Instead, the court limited the amount to a $5,000 fine on Eighth Amendment grounds. *Bajakajian* thus provides an authoritative and apt example of comparable treatment.

Because the civil penalties do not comport with the Excessive Fines Clause of the Eighth Amendment, the willful FBAR penalties are invalid.

## PRAYER/REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Defendant Sharnjeet K. Sagoo respectfully requests that Plaintiff's Complaint be dismissed, that Plaintiff's requested relief be denied, that Plaintiff take nothing by its lawsuit, that Defendant recover all costs of court expended herein, and for such other and further relief to which the Defendant may be justly entitled.

**Dated: March 12, 2025**

Respectfully submitted,

**FREEMAN LAW, PLLC**

By:    **/s/ Jason B. Freeman**
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
JASON B. FREEMAN
TX Bar No. 24069736
DEVIN M. HLUDZIK
TX Bar No. 24138552
THOMAS L. FAHRING III
TX Bar No. 24074194

7011 Main Street
Frisco, Texas 75034
(214) 984-3000 [v]
(214)984-3409 [f]
Jason@FreemanLaw.com
DHludzik@FreemanLaw.com
TFahring@FreemanLaw.com

**ATTORNEYS    FOR    DEFENDANT
SHARNJEET K. SAGOO**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on **Wednesday**, March 12, 2025, a true and correct copy of the foregoing document was served via electronic filing upon all counsel of record.

<u>**/s/ Jason B. Freeman**</u>
JASON B. FREEMAN