# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff* | § § | Case No. 4:24-cv-1159 |
| V. | § § | |
| SHARNJEET K. SAGOO, | § § § | |
| *Defendant.* | § | |

## DEFENDANT SHARNJEET K. SAGOO'S REPLY
## TO UNITED STATES' RESPONSE IN OPPOSITION
## TO SHARNJEET K. SAGOO'S MOTION TO DISMISS

Defendant Sharnjeet K. Sagoo ("Defendant" or "Ms. Sagoo") hereby files this Reply to the United States' ("Plaintiff") Response in Opposition to Sharnjeet K. Sagoo's Motion to Dismiss (the "Response"). (Doc. No. 17). Defendant respectfully requests that the Court dismiss Plaintiff's Complaint filed on November 24, 2024. (Doc. No. 1).[1]

**I.   The IRS's Assessment of the Penalty Violated the Seventh Amendment.**

The government concedes that "[Ms. Sagoo] is entitled to a jury of her peers to determine whether she is *liable* for the FBAR penalty." (Pl.'s Resp., Doc. No. 17, at 2). But despite that, the government *already* determined (without a jury) that she was liable for the FBAR penalty when it assessed a penalty of $1,020,992.50 against her some two-plus years ago. That assessment of the penalty had real consequences: It rendered (albeit unconstitutionally) the assessment into a debt to the

---

[1] Unless explicitly stated, Ms. Sagoo does not concede any of the positions as stated in her Motion to Dismiss. (Doc. No. 8). Accordingly, all positions, facts, and authority are re-incorporated by this Reply.

United States and entitled the government to take measures to collect the assessment, such as through administrative offsets, garnishment, and other tools. 31 U.S.C. § 3716. Nonetheless, and despite its concession, the government maintains that Ms. Sagoo is wrong that "a penalty may not be assessed absent a jury trial." (Doc. No. 17, at 5). It posits that although "[Ms. Sagoo] was not afforded a pre-assessment opportunity to contest the willful FBAR penalties before a jury," there was no injury to her Seventh Amendment right (to have a jury determine whether she is liable for that penalty) because she now (years later) has the right to have a jury determine whether to convert that existing penalty assessment into a judgment—a device that expands the government's avenues to collect on the assessment. (Doc. No. 17, at 2).

The government filed this suit, not to determine whether Ms. Sagoo could be liable for the FBAR penalty, but to increase its collection options and remedies available to collect an already-assessed penalty. It acknowledges as much: "The IRS, as provided by statute, assessed the FBAR penalties. Then, in this judicial proceeding to collect those penalties" it seeks to obtain a judgment to expand its collection tools. (Doc. No. 17, at 4). The government brings this suit under two statutes: 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C). Section 5321(b)(2) authorizes the Treasury to "commence a civil action to recover *a civil penalty assessed*." Section 3711(g)(4)(C) authorizes the Treasury to refer a nontax claim to the Department of Justice for litigation. Notably, neither statute provides that the underlying administrative assessment is somehow negated or dissolved if a defendant prevails in the judicial proceeding. Rather, the only clear implication is that the government simply would not obtain a judgment and access to the additional collection avenues that come with it. But its assessment would remain.

Against this backdrop, the government has clearly violated Ms. Sagoo's Seventh Amendment rights.

### A. The Seventh Amendment Prohibits an Agency From Unilaterally Assessing a FBAR Penalty Without an Article III Proceeding and a Jury.

The Seventh Amendment protects a person against an agency's unilateral assessment of a penalty in the first instance. *See AT&T, Inc. v. Fed. Commc'ns Comm'n*, No. 24-60223, 2025 WL 1135280 (5th Cir. Apr. 17, 2025).[2] It prohibits the imposition of the penalty without a jury first determining that the defendant is liable for the penalty. *See id.* at *9. Those protections are violated by the framework here, where the government first assessed the penalty, initiated collection activities, and then, several years later, opted to initiate a lawsuit to convert that assessment into a judgment in order to expand its collection rights.

The assessment of a penalty carries with it a determination of liability for that penalty. It signifies both that the agency has determined that the person is liable for the penalty and that it determined a particular amount is appropriate for that penalty. As such, by making an assessment, the agency is necessarily usurping the acknowledged role of a jury to determine liability.

A violation of the Seventh Amendment cannot be retroactively "cured," as the government implicitly suggests. *Id.* As explained below, after an FBAR penalty is assessed, there is no guarantee that an FBAR-penalty defendant will ever have access to have a jury determine anything. Such access depends upon whether the government later seeks to convert their assessment into a judgment.

As the government informs the court, *"if the FBAR penalties are [first] paid to the United States,"* the person has a procedural right to then" pursue an illegal exaction claim against the government under the Little Tucker Act and the Tucker Act." (Doc. No. 17, at 3). The government is correct. However, it overlooks a monumental detail: <u>there is **no right to a jury** for a claim under the Little</u>

---

[2] Note that just over a month after Defendant Sagoo filed her Motion to Dismiss, the Fifth Circuit published an opinion in *AT&T, Inc. v. Fed. Commc'ns Comm'n*, No. 24-60223, 2025 WL 1135280, at *9 (5th Cir. Apr. 17, 2025) that bears heavily on the issues raised with respect to the Seventh Amendment. Counsel points the Court to the *AT&T* case, given its recency and particular relevance to the issues.

**DEFENDANT'S REPLY** 3

Tucker Act or the Tucker Act for the recovery of the penalty at issue here. 28 U.S.C. § 2402 (no right to jury under Little Tucker Act); 28 U.S.C. § 1491(a)(1) (Tucker Act vests exclusive jurisdiction in the Court of Federal Claims); 28 U.S.C. § 174 (no right to jury in Court of Federal Claims).[3] Thus, if the government never exercises its discretion to bring a suit to convert its assessment into a judgment, the defendant would never have a right to a jury with respect to *any* aspect of the penalty.

The government, however, whistles past this reality. And, what is more, it bases its entire effort to distinguish *Jarkesy* upon its failure to recognize that the Tucker and Little Tucker Acts do not afford a right to a jury for a claim of this magnitude: In *Jarkesy*, it informs the Court, "because the SEC unilaterally chose to bring its enforcement action before its own in-house administrative law judge, Mr. Jarkesy was *never* afforded the guarantees of an Article III court or the opportunity to have his liability for civil fraud penalties determined by a jury." (Doc. No. 17, at 5). "[An FBAR-penalty defendant], on the other hand," the government claims, "is entitled to a jury trial for the civil penalties that the IRS assessed against her, and she is afforded the guarantees of an Article III court." (*Id.* p. 6). But, again, that is decidedly not so.

Indeed, as laid out above, an FBAR-penalty defendant would never have an opportunity to have a jury trial for the civil penalty unless the Treasury "unilaterally chose to bring" an action in an Article III court to convert its penalty assessment into a judgment. If it "unilaterally chose [not] to bring" such an action, there is no right to a jury for a penalty of this magnitude. That is, just as in *Jarkesy*, the government controls whether a defendant ever receives a right to have a jury determine their liability. Access to that Constitutional right cannot properly rise or fall on what forum an

---

[3] And even if this were not the case, given that the Tucker Act and Little Tucker Act require a defendant to first pay in the exaction, can an agency properly force a person to pay what would be, in effect, a "user fee" to exercise their Seventh Amendment right that should have protected against the assessment of that "user fee" (penalty) in the first place? It is certainly not possible to glean support for such a concept from the text of the Constitution.

**DEFENDANT'S REPLY**                                                                 4

administrative agency decides to invoke or whether it decides to simply not pursue a judgment. *See AT&T, Inc. v. Fed. Commc'ns Comm'n*, No. 24-60223, 2025 WL 1135280, at *9 (5th Cir. Apr. 17, 2025). Thus, the government's attempt to distinguish *Jarkesy* actually underscores why its FBAR penalty assessment power offends precisely the same interests as those at issue in *Jarkesy* and why *Jarkesy* controls.

   **B.** **The IRS Usurped the Role of an Article III Court to Calculate the Penalty.**

  Finally, the government's position that an administrative agency can properly calculate the amount of the penalty (particularly when a jury has not yet even found a person liable for such penalty) without offending the Seventh Amendment fails. First, it makes the unwarranted and unsupported logical leap that because an Article III court, in conjunction with a jury proceeding, may have a right to exercise its discretion to determine the proper *amount* of a penalty that a jury has found applicable, that an administrative agency can do so as well (before it even knows if a jury will ever come to pass on the issue whatsoever). The determination of the proper amount of a penalty, however, is the province of an Article III court. And as the government acknowledges, the discretion with respect to the amount of the penalty is great: It "can vary in amount from zero to the statutory maximum." (Gov't Resp. p. 3). An administrative agency cannot usurp that role without violating the separation of powers.

  Indeed, "[t]he Constitution prohibits Congress from 'withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law.'" *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 127 (2024) (quoting *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 284, 15 L.Ed. 372 (1856)). "If a suit is in the nature of an action at common law, then . . . adjudication by an Article III court is mandatory." *Id.* at 128 (citing *Stern v. Marshall*, 564 U.S. 462, 484 (2011). "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer

**DEFENDANT'S REPLY**  5

the Government's 'judicial Power' on entities outside Article III." *Id.* at 132 (quoting *Stern*, 564 U.S. at 484). As the Supreme Court has recently reiterated:

> These propositions are critical to maintaining the proper role of the Judiciary in the Constitution: "Under 'the basic concept of separation of powers ... that flow[s] from the scheme of a tripartite government' adopted in the Constitution, 'the judicial Power of the United States'" cannot be shared with the other branches.

*Id.* at 127. (citing *Stern*, at 483 and quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974); alteration in original).

Moreover, allowing an agency to do so allows the agency to use its discretion to determine the amount of the penalty without basing the amount of that penalty on fact findings of a jury (or Article III fact findings). In a very real sense, doing so is an arbitrary exercise of discretion because it (i) determines an amount of a penalty that someone has not actually been determined liable for and (ii) bases the amount of that penalty on facts that have not been determined by a jury. The discretionary calculation of the proper amount of a penalty turns on fact-finding—applying the specific facts and circumstances of the specific defendant. Those facts must be determined through an Article III process, with a jury. Otherwise, the "guarantee[] of an Article III court" is converted from a right to have that court apply its discretion to determine one's fate into a right to have it defer to an agency's discretion, so long as it is not arbitrary. Such a conversion runs afoul of the Seventh Amendment. *AT&T, Inc. v. Fed. Commc'ns Comm'n*, No. 24-60223, 2025 WL 1135280, at *9 (5th Cir. Apr. 17, 2025) (limitations on subsequent judicial review of an agency's assessment of a penalty constitute a "glaring problem" for Seventh Amendment purposes).

Under our Constitutional order, the power to impose this life-altering penalty is not vested in the executive branch or its agency—rather, that power is vested in an Article III court and, ultimately, with a jury. The safeguard is a structural one and of great importance. The coercive power that stems from the ability of a government to assess such significant penalties cannot be overlooked. Allowing an agency to wield such a power not only vitiates an individual's Constitutional right, it usurps the role

**DEFENDANT'S REPLY**                                                                 6

of an important democratic bulwark that serves as a structural check on government power: the jury. And we weaken the role of the jury at our peril.

## II. Ms. Sagoo Did Not Violate 31 U.S.C. § 5314; And Therefore, the Penalty Calculation Is Void under 31 U.S.C. § 5321(a)(5).

Plaintiff maintains that "the willful FBAR penalties assessed against Ms. Sagoo for her [alleged] willful failure to file FBARs in 2011 through 2013 are valid under Section 5321(a)(5)." (Doc. No. 17, at 14). However, 31 U.S.C. § 5314(a) leaves it up to the Secretary to prescribe "the way and . . . the extent" for filing such reports, without actually prescribing what the requirements under 31 U.S.C. § 5314 are. Accordingly, Ms. Sagoo did not violate 31 U.S.C. § 5314. If anything, she allegedly violated a regulation.

Further, Plaintiff acknowledges that 31 U.S.C. § 5321(a)(5) governs the calculation of penalties for willful FBAR violations. Plaintiff also admits without further explanation that there may have been "possible computational issues related to balance of the Giro Bank accounts used in the penalty computation." (Compl., Doc. No. 1, at ¶90). Thus, rather than asking the Court for a judgment in the amount of the penalties that the IRS assessed against Ms. Sagoo—as one normally would expect in a case "to reduce to judgment and collect civil penalties assessed against" an individual—the United States asks the Court to ignore these "possible computational issues," render judgment that Ms. Sagoo is liable for willful FBAR penalties, and leave it to the IRS to determine at a later date the amount of penalties to be assessed against Ms. Sagoo.

Plaintiff does not elaborate on what the "possible computational issues" with regard to the IRS's penalty assessment may be and makes no attempt to explain how the penalties that the IRS assessed against Ms. Sagoo comply with 31 U.S.C. § 5321(a)(5). Indeed, Plaintiff does not even deny that the IRS in fact used the highest balances in calculating the penalties that the IRS assessed against Ms. Sagoo. Instead, Plaintiff tries to deflect by reciting general principles of how the willful FBAR penalty is calculated and claiming that a determination of whether the assessed penalties are arbitrary

**DEFENDANT'S REPLY**                                                                 7

and capricious under the Administrative Procedure Act would require a review of the administrative record. Apparently, however, Plaintiff has little to no faith in this administrative record, as Plaintiff is not asking the Court to reduce the penalties that the IRS *actually* assessed against Ms. Sagoo to judgment. As such, it is absurd for Plaintiff to argue that the IRS's incorrect penalty computation is somehow irrelevant at this stage, all while asking the Court essentially to rubberstamp whatever penalty calculation the IRS eventually does come up with.

Again, Plaintiff admits that there may have been "possible computational issues" with regard to the calculation of willful FBAR penalties against Ms. Sagoo and does not deny that the IRS, in violation of 31 U.S.C. § 5321(a)(5), used the highest balances for the accounts at issue to calculate the willful FBAR penalties against Ms. Sagoo. Thus, the penalties assessed against Ms. Sagoo should be declared void, and Plaintiff's action against Ms. Sagoo should be dismissed.

### III. The Then-Governing Regulation Limited FBAR Penalties to $100,000.

Plaintiff takes the position that the then-existing regulation does not limit FBAR penalties to $100,000, and states that "in arguing to the contrary, Ms. Sagoo relies on one district court case from 2018" citing *United States v. Colliot*, No. AU-16-CA-01281-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018). (Doc. No. 17, at 11). To support its position that Ms. Sagoo is incorrect—which she is not— Plaintiff cites court decisions issued in other circuits. However, Plaintiff did not cite to *any* Fifth Circuit authority, where both *Colliot* and this case are based, to refute Ms. Sagoo's position.

A decision issued by another circuit is not binding precedent. *Avelar-Oliva v. Barr*, 954 F.3d 757, 765 (5th Cir. 2020) (citing *United States v. Penaloza-Carlon*, 842 F.3d 863, 864 and n.1 (5th Cir. 2016)); *Dyer v. City of Mesquite*, No. 3:15-cv-2638-B, 2016 WL 2346740, at *6 (N.D. Tex. May 3, 2016); *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 609 (S.D. Tex. 2023) ("The decisions of sister courts in other circuits are not binding on this Court."). "[D]ecisions issued by [other] Circuits are not binding authority on the Fifth Circuit. This Court is governed by Fifth Circuit

and Supreme Court precedent." *Frazier v. Foxworth*, No. 6:15-cv-669, 2015 WL 13665972, at *1 (E.D. Tex. Dec. 3, 2015); *Penaloza-Carlon*, 842 F.3d at 864 (where the Court was not bound by non-Fifth Circuit cited decisions because they are "not binding in this circuit and are inconsistent with our precedent.").

Plaintiff's contention that the "majority" of courts held contrary to Ms. Sagoo's position is misleading. And, in any event, this Court is not bound by any of the cases cited in Plaintiff's Response.

In addition, and notably, the government makes no effort to explain why this Court should not adhere to the principle that "an agency is bound by its regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1387 (5th Cir. 1979).  Nor does it address the ex post facto violations inherent in the retroactive amendment of an administrative regulation to significantly expand a penalty of this nature.

Accordingly, this Court should find in favor of Ms. Sagoo and hold that the governing regulation established a maximum FBAR penalty amount, just as *Colliot*—a court within this circuit— did.  Alternatively, it should find that the application of a retroactive amendment of the regulation violated the prohibition against ex post facto laws and exceeded the agency's authority.

## PRAYER/REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Defendant Sharnjeet K. Sagoo respectfully requests that Plaintiff's Complaint be dismissed, that Plaintiff's requested relief be denied, that Plaintiff take nothing by its lawsuit, that Defendant recover all costs of court expended herein, and for such other and further relief to which the Defendant may be justly entitled.

**Dated: May 14, 2025**            Respectfully submitted,

                               **FREEMAN LAW, PLLC**

                             By:   **/s/ Jason B. Freeman**
                                    JASON B. FREEMAN
                                    TX Bar No. 24069736
                                    DEVIN M. HLUDZIK
                                    TX Bar No. 24138552

        THOMAS L. FAHRING III
        TX Bar No. 24074194

        7011 Main Street
        Frisco, Texas 75034
        (214) 984-3000 [v]
        (214)984-3409 [f]
        Jason@FreemanLaw.com
        DHludzik@FreemanLaw.com
        TFahring@FreemanLaw.com

        **ATTORNEYS FOR DEFENDANT SHARNJEET K. SAGOO**

## CERTIFICATE OF SERVICE

This is to certify that on Wednesday, May 14, 2025, a true and correct copy of the foregoing document was served via electronic filing upon all counsel of record.

        **/s/ Jason B. Freeman**
        JASON B. FREEMAN