IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:24-CV-01159-O |
| § | |
| SHARNJEET K. SAGOO § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant's Motion to Dismiss (ECF No. 8), filed March 12, 2025; Plaintiff's Response (ECF No. 17), filed April 23, 2025; and Defendant's Reply (ECF No. 20), filed May 14, 2025. After examining the relevant authorities and arguments, the Court **GRANTS** Defendant's Motion to Dismiss.

**I.   BACKGROUND[1]**

Plaintiff United States of America (the "Government") brings this action against Sharnjeet K. Sagoo ("Ms. Sagoo"). The Government seeks to reduce its assessed penalties to judgment and collect civil penalties against Ms. Sagoo for her failure to report timely her financial interests in foreign bank accounts for calendar years 2011, 2012, and 2013.

Congress enacted the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311–5328, in response to an increasing "unavailability of foreign and domestic bank records of customers thought to be engaged in activities entailing criminal or civil liability." *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974). "The [BSA] does not make it illegal to hold foreign accounts. Nor does the BSA

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

tax those accounts." *Bittner v. United States*, 598 U.S. 85, 89 (2023). Rather, "[t]he express purpose of the Act is to require the maintenance of records, and the making of certain reports, which have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *Cal. Bankers Ass'n*, 416 U.S. at 26 (internal quotation marks and citations omitted).

Section 5314(a) of the BSA requires a United States citizen or resident to file a Foreign Bank and Financial Accounts Report ("FBAR") to the Secretary of the Treasury when he or she "makes a transaction or maintains a relation for any person with a foreign financial agency." 31 U.S.C. § 5314(a). A relationship with a foreign financial agency is defined as a United States person's "interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a).

Section 5321(a)(5)(C) of the BSA authorizes the Secretary of the Treasury to impose civil penalties for willful failure to comply with the reporting requirements of Section 5314(a). The maximum penalty is equal to the greater of $100,000 or fifty percent of the balance in the foreign account at the time of the violation. 31 U.S.C. § 5321(a)(1). "Upon assessment, FBAR penalties become a nontax debt to the United States. Once that debt has been delinquent for more than 180 days, the Secretary may refer the debt to an executive agency to take appropriate collection action."[2] One avenue of collection "is referral to the Department of Justice for litigation."[3]

Enter this lawsuit. During 2011, 2012, and 2013, Ms. Sagoo was a United States person within the meaning of Section 5314(a). Also during this time, Ms. Sagoo held an interest in multiple financial accounts at financial institutions in Kenya, India, and England. In 2011, the total balance of these accounts was $1,445,188. In 2012, the total balance of these accounts was $1,503,358. And in 2013, the total balance of these accounts was $1,769,355.

---

[2] Pl.'s Resp. 3, ECF No. 17 (citing 31 U.S.C. § 3711(g)(1), (4)).
[3] *Id.* (citing 31 U.S.C. §§ 3711(g)(4)(C), 5321(b)(2)).

Despite Section 5314(a)'s reporting requirements to disclose financial interests in foreign financial accounts, Ms. Sagoo did not timely file FBARs for those years. So, on December 2, 2022, a delegate of the Internal Revenue Service ("IRS") assessed a penalty of $1,020,922.50 against Ms. Sagoo for willfully failing to report her foreign financial interests in 2011, 2012, and 2013. On December 15, 2022, Ms. Sagoo received notice of the assessed FBAR penalties and a demand for payment. Ms. Sagoo did not pay the FBAR penalties assessed against her. After her failure to pay, the IRS identified possible computational issues with the penalty.

The Government filed suit, requesting that this Court reduce the assessed FBAR penalties to judgment in an amount that the IRS will recalculate in future proceedings. Ms. Sagoo has moved to dismiss the Government's Complaint under Federal Rule of Civil Procedure 12(b)(6).[4]

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a

---

[4] *See* Def.'s Mot. to Dismiss 2, ECF No. 8.

"probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks and citation omitted).

### III. ANALYSIS

The Government brings this action requesting that this Court enter judgment for penalties under 31 U.S.C. § 5321(a)(5)(C).[5] Ms. Sagoo moves to dismiss this action under Rule 12(b)(6) for failure to state a claim. Specifically, Ms. Sagoo argues that the Government acted in violation of (1) the Seventh Amendment, (2) the statutory language of Section 5314, (3) the statutory language of Section 5321(a)(5) and the Administrative Procedure Act, and (4) the Eighth Amendment's

---

[5] Pl.'s Compl. 14–16, ECF No. 1.

Excessive Fines Clause.[6] As shown below, the Court holds the FBAR penalty assessment did not comply with the Seventh Amendment. Therefore, the Court **GRANTS** Ms. Sagoo's Motion to Dismiss. Accordingly, the Court does not address Ms. Sagoo's other arguments for dismissal.

Following the Supreme Court's recent decision in *SEC v. Jarkesy*, the Government concedes that Ms. Sagoo is entitled to a Seventh Amendment civil jury trial.[7] 603 U.S. 109 (2024). That is, the Government does not dispute the Seventh Amendment is implicated when the IRS seeks FBAR penalties. Nor does the Government argue the public-rights exception applies to FBAR actions. The Government only disputes whether the Seventh Amendment has already been violated.[8] "[B]ecause Ms. Sagoo has access to a jury trial [in federal court] to determine *de novo* her liability for the willful FBAR penalties assessed against her," the Government argues that her Seventh Amendment right has not been offended.[9]

By contrast, Ms. Sagoo explains *this* "suit is not one to determine whether to impose a penalty; rather, it is one to 'reduce [an already assessed] penalty to judgment.'"[10] She contends the agency's *underlying* assessment "is invalid because the penalized individual is guaranteed a jury trial in an Article III court before such a penalty can be assessed."[11] The Court agrees with Ms. Sagoo.

The framers adopted the Seventh Amendment to secure the right to a civil jury trial "against the passing demands of expediency or convenience." *Reid v. Covert*, 354 U.S. 1, 10 (1957). This right is "'of such importance and occupies so firm a place in our history and jurisprudence that any

---

[6] *See* Def.'s Mot. to Dismiss, ECF No. 8.
[7] Pl.'s Resp. 2, ECF No. 17 ("Ms. Sagoo does have a Seventh Amendment right to a jury trial in an FBAR case—in this very case, in fact.").
[8] *Id.* at 4.
[9] *Id.* at 6. In any event, the Government argues that Ms. Sagoo "elected to forego a jury trial in this case," and thus she waived her Seventh Amendment right to a jury trial in this action. *Id.*
[10] Def.'s Mot. to Dismiss 3, ECF No. 8 (alteration in original) (quoting Pl.'s Compl. 14, ECF No. 1).
[11] *Id.*

seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

Despite the historical significance and protection of the Seventh Amendment, the Government here cites no authority "supporting the proposition that the constitutional guarantee of a jury trial is honored by a trial occurring *after* an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment." *AT&T, Inc. v. FTC*, 135 F.4th 230, 242 (5th Cir. 2025) (emphasis added). Indeed, as the Fifth Circuit recently held in *AT&T*, a jury trial that follows an agency's assessment of civil penalties falls short of what the Seventh Amendment guarantees. *Id.* at 241–42. The Fifth Circuit provided three reasons.

First, an "after-the-fact jury trial" does not protect an individual's Seventh Amendment right because the agency already adjudicated liability without the benefit of a neutral factfinder. *Id.* at 242. Here, the Secretary of the Treasury and the IRS "acted as prosecutor, jury, and judge." *Id.* at 241. It investigated Ms. Sagoo, determined that she was liable, and assessed a penalty based on their own factual conclusions. This fundamentally undermines a core function of the Seventh Amendment to provide a neutral factfinder for suits at common law. *Jarkesy*, 603 U.S. at 133; s*ee also Dimick*, 293 U.S. at 486 ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence.").

Second, an after-the-fact trial does not protect an individual's Seventh Amendment right because the adjudication and civil penalties come with "real world impacts." *AT&T*, 135 F.4th at 241–42. These impacts include the threat to either pay or get sued, reputational harm, and administrative offsets. *Id.*; 31 U.S.C. § 3716. Here, the Government brought this action "to reduce to judgment and collect civil penalties assessed against [Ms. Sagoo]."[12] Hence, a real-world

---

[12] Pl.'s Compl. 1, ECF No. 1.

consequence of the IRS's assessment is that the Government can collect Ms. Sagoo's FBAR penalties through administrative offsets before a jury ever determined that she was liable to the government for any amount of money.

Third, an after-the-fact trial does not protect an individual's Seventh Amendment right when the after-the-fact trial is the only opportunity for an individual to exercise her Seventh Amendment right. *AT&T*, 135 F.4th at 241–42. Ms. Sagoo only has access to an Article III court with a jury *after* the penalty has been assessed. And even after the penalty is assessed, Ms. Sagoo does not have the opportunity to exercise her Seventh Amendment rights unless she refuses to pay the penalty and the Treasury chooses to bring an action to convert the penalty into a judgment. *See id.* at 242 (holding that "defy[ing] a multi-million dollar penalty" and "wait[ing] for DOJ to sue" just to gain access to Seventh Amendment rights is unconstitutional).

Like the Fifth Circuit in *AT&T*, "[n]o one denies the [IRS]'s authority to enforce laws" requiring individuals to report their foreign financial bank accounts. *Id.* But the IRS "must do so consistent with our Constitution's guarantees of an Article III decisionmaker and a jury trial." *Id.* Because the Government (1) adjudicated liability and levied civil penalties against Ms. Sagoo (2) that had real world consequences, and (3) an after-the-fact trial brought by the Government would be Ms. Sagoo's sole opportunity to appear before a jury, the Court holds that the Government violated Ms. Sagoo's Seventh Amendment right to a civil jury trial.[13] Accordingly, the Court must **DISMISS** this action.[14]

---

[13] Because the Government concedes that the Seventh Amendment is implicated, the Court does not address that otherwise threshold question.

[14] To clarify, the only relief the Court grants Ms. Sagoo is dismissal of Plaintiff's Complaint. The Court does not opine on any issues or relief outside of dismissal.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ms. Sagoo's Motion to Dismiss (ECF No. 8). The Government's claims are **DISMISSED with prejudice**. Separate Final Judgment shall issue.

**SO ORDERED** on this **19th day** of **September, 2025**.

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**